The bill in this cause was filed to foreclose twelve certificates issued by the borough of Clementon upon the sale of several tracts of land made May 19th, 1932, for unpaid taxes for the years 1929 and 1930, which tax sale certificates were assigned to complainants herein. A joint and several answer was filed by defendants J.H. Thayer-Martin, state tax commissioner of the State of New Jersey, and the State of New Jersey. A motion was made to strike this answer which motion was held until final hearing. At final hearing the facts were stipulated, and in addition to setting forth the sale *Page 257 
for unpaid municipal taxes, the issuance of tax certificates, and the assignments thereof, showed also that Ralph W. Pilling, the former owner of the premises, died seized thereof on December 16th, 1926; that his will disposed of his entire estate, including the lands in question; that the will was admitted to probate on January 6th, 1927; that inheritance taxes amounting to $3,504.38 were assessed on October 23d 1929; and that the tax chargeable against the contingent remainder of a trust created under said will was assessed on November 2d 1933, amounting to $238.68. These inheritance taxes were not paid, and proceedings were had in the prerogative court under the statute (section 21, chapter 228, P.L. 1909, as amended by section 14, chapter 303,P.L. 1931) against Byron Hancock, executor under said will; by a decree of that court, made on September 4th, 1934, it was adjudged that there was due J.H. Thayer-Martin, state tax commissioner, for the use of the State of New Jersey, from said executor, said sums of inheritance taxes, together with interest. A copy of that decree was docketed and filed in the office of the clerk of the supreme court on June 4th, 1935, and on June 7th, 1935, a writ of execution was issued out of the New Jersey supreme court to the sheriff of Camden county, and by virtue of such writ said decedent's land was sold to J.H. Thayer-Martin, state tax commissioner, in behalf of the State of New Jersey, and a deed executed therefor to him. Complainant alleges in its bill that the interest of the tax commissioner and the State of New Jersey is subsequent and subject to the lien of the municipal taxes for 1929 and 1930, and of the said tax certificates. The answers filed by the said defendants present two issues; one, whether the lien of the state for inheritance taxes is prior to the lien of the tax sale certificates of complainant, and the other, whether the state or the tax commissioner can be sued without the consent of the state.
At the date of the death of Ralph W. Pilling, the Transfer Inheritance Tax act, chapter 228, laws of 1909, page 325, as amended by chapter 174, laws of 1922, page 297, was in effect. Section 5, as amended, provides: *Page 258 
"All taxes imposed by this act shall be due and payable at the death of the testator, intestate, grantor, donor or vendor, unless in this act otherwise provided, and if not paid within one year from the date of the death of the testator, intestate, grantor, donor or vendor, such tax shall bear interest at the rate of ten per centum per annum, to be computed from the expiration of one year from the date of the death of such testator, intestate, grantor, donor or vendor, or until the same is paid, and in all cases where the executors, administrators, grantees, donees, vendees or trustees do not pay such tax within one year from the death of the decedent, they shall be required to give a bond to the State of New Jersey in double the amount of the tax, conditioned to pay said tax, and any interest which may fall due thereon, said bond to be approved as to the form and sufficiency thereof by the Comptroller of the Treasury of this State.
All taxes levied and assessed under this act shall be and remain a lien on all property owned by the decedent as of the date of death until paid or secured by bond, as provided for in the several provisions of this act."
The inheritance taxes were neither paid nor secured by bond as provided in said act; therefore, the lien of the State of New Jersey attached as of the date of death of the decedent, owner at that time of the premises in question, and this lien continued to remain in effect, notwithstanding that the assessment was made at a later date. The municipal taxes, the lien of which is represented by the tax certificates under foreclosure, were assessed subsequently to the decedent's death.
In the case of Gilleon Realty Co. v. Day, Executor
(116/513), decided by Vice-Chancellor Berry, but not reported, the issue involved on motion to strike complainant's bill was whether the state's lien for inheritance taxes, assessed prior to the levy for municipal taxes for which the lands were sold by the municipality, was subordinate to that of the municipality. In that case it was contended by the complainant, who acquired the tax certificate and proceeded to foreclose same, that section 9 of "Tax Sale Revision," P.L. 1918 pp. 883, 884, had the same effect of making a municipal tax lien superior to the state's lien. The pertinent part of that section reads as follows:
"Each and every municipal lien shall be and remain a first lien on such land and paramount to all prior or subsequent alienations and descents of said lands or encumbrances thereon, except subsequent municipal liens." *Page 259 
Vice-Chancellor Berry in his conclusions filed in that case said:
"The general rule is that an act of the legislature postponing prior encumbrances to the lien of municipal taxes will not be construed to apply to prior liens held by the state unless the government, expressly or by necessary implication, is included in the language of the act. In Trustees, c., v. City of Trenton,30 N.J. Eq. 667, the court of errors and appeals held that a provision of the city charter of Trenton giving the lien of city taxes priority over judgments, mortgages and other encumbrances and making the title of the purchaser at a tax sale paramount to such other liens and encumbrances, did not apply to prior liens of the state. To the same effect are O'Hanlin v. Den,20 N.J. Law 31; affirmed, 21 N.J. Law 582, and Smith v. Specht,58 N.J. Eq. 47. The principle was applied in Spark v. La ReineHotel Corp., 112 N.J. Eq. 398 (at p. 404), where it was held that the tax claim of a political subdivision of the state cannot, without specific statutory enactment, be superior to the claim of the state itself. The language of the act relied upon by the complainant is general in terms and is not broader in effect than the act of 1888 (P.L. 1888 p. 372; 3 Comp. Stat. p. 335 §368) under consideration in Smith v. Specht, supra. In view of this and prior decisions, and of the general principle involved, I think it may be confidently assumed that had the legislature intended to subordinate state tax liens to subsequent municipal tax liens, that intention would have been expressed in clear and unequivocal language. But it is not. In my judgment, the lien of the state here involved is superior to that of the complainant. The motion to strike the bill will be granted."
In the case now before the court it is contended that the proceedings taken by the state tax commissioner to enforce the payment of the tax, by which proceedings the title to the premises became vested in said tax commissioner for the benefit of the State of New Jersey, were irregular and had the effect of subordinating the lien of the state to that of the complainant. It is admitted that J.H. Thayer-Martin, state *Page 260 
tax commissioner, is the owner of record of the premises in question and that he is acting for the State of New Jersey. While the complainant argues that the state's title is defective, this issue is not raised by the pleadings and cannot be heard. SeeSixteenth Ward Building and Loan Association v. Louisi,108 N.J. Eq. 619.
The proceedings taken under the statute by the state tax commissioner in the prerogative court and in the supreme court, cannot be attacked collaterally as those courts had jurisdiction over the subject-matter. National Docks, c., Railway Co. v.Pennsylvania Railroad Co., 52 N.J. Eq. 58; affirmed, 52 N.J. Eq. 590.
Such attack should be made in a direct proceeding brought for that purpose. 3 Cooley Tax. (4th ed.) 2788-2790 § 1408.
The complainant further contends that the state tax commissioner, at the time of the sale of the lands in question under the execution issued out of the supreme court, was not authorized to take title to said premises. This contention does not appear to be a sound one, because the purpose of the procedure to enforce the collection of the inheritance taxes would be nullified if the enforcing officer was unable to protect the interest of the State of New Jersey by bidding at the sheriff's sale and purchasing the property on behalf of the state should there be no prospective purchasers bidding a sufficient amount to satisfy the tax; therefore, I shall hold that at the date of the sale it was within the power of the state tax commissioner to purchase the properties. This right to purchase, even if then questionable (which I do not think it was) is confirmed by the provisions of P.L. 1936 ch. 113 p. 279, section 1 of which provides:
"The State Tax Commissioner is hereby authorized and empowered to bid for and purchase any property, real and personal,heretofore or hereafter exposed to sale under the order or decree of any court for the payment and satisfaction of any claim for taxes held by the State of New Jersey, and to take and hold the title to the property, real and personal, so purchased in his official name, style and title; provided, however, that the said commissioner shall in no case bid a higher price for such property, real and personal, than shall be sufficient to save the amount due to the State of New Jersey upon its claim." *Page 261 
The lien of the State of New Jersey for these inheritance taxes could only be enforced in a manner provided by the statute.Archibald v. Maurath, 92 N.J. Eq. 357.
Section 21 of the Inheritance Tax act, as amended by section 14 of P.L. 1931 ch. 303 p. 764, provides:
"If it shall appear to the State Tax Commissioner that any tax which has accrued under this act has not been paid according to law said Commissioner shall report such fact, in writing, to the register of the Prerogative Court, and said register shall issue a citation citing the persons or corporations interested in the property liable to said tax to appear before the Ordinary on a certain day, not more than three months from the date of such citation, and show cause why such tax should not be paid; the service of such citation and the subsequent proceedings had thereon shall conform to the practice prevailing in the Prerogative Court. Upon the making of any decree the register of the Prerogative Court shall, upon the request of the State Tax Commissioner furnish one or more copies of said decree, and the same shall be docketed and filed by the clerk of the Supreme Court, or by the county clerk of any county in this State, upon the request of the State Tax Commissioner, and the same shall have the same effect as a lien by judgment, and execution shall issue thereon according to the rules and practice appertaining to other judgments docketed and filed with said respective clerks."
Under the statute the state's lien attached at the date of death of the decedent; such lien having attached prior to that of the complainant, the title acquired by the tax commissioner under the sheriff's sale was a title in fee-simple and vested in the tax commissioner for the State of New Jersey the title to the property free of the lien of the complainant under its tax sale certificates. The decree entered in the prerogative court in favor of the tax commissioner related back and took effect as of the date fixed by the statute when the lien attached, which was the date of decedent's death.
The proceedings taken in the prerogative court to enforce a lien for inheritance taxes are analagous to some extent to the proceedings to enforce a mechanic's lien. In Tanner v. BoyntonLumber Co., 98 N.J. Eq. 85, Vice-Chancellor Fielder said:
"* * * Under the law the builder's debt became a lien upon complainant's building and lands from the time such material was furnished and the proceedings in the circuit *Page 262 
court, so far as complainants were concerned, was an actionquasi in rem to establish and foreclose the lien which complainants had, by virtue of the law, given the Boynton Lumber Company. * * *"
In 2 Freem. Judg. (5th ed.) 2066 § 980, it is said:
"Where the judgment is rendered in an action for the enforcement of a statutory or contract lien the lien of the judgment, at least so far as its priority is concerned, dates from the time of the previous lien which it enforces. * * *"
I have concluded that the state's lien for transfer inheritance taxes in this cause is prior to the lien of the tax sale certificates; that the status of the lien was not adversely affected by the proceedings taken by the state tax commissioner to enforce the same; and that the state tax commissioner, for the benefit of the State of New Jersey, is seized of an estate in fee-simple in the premises in question, and that he cannot be divested of his title under the bill for strict foreclosure filed in this cause.
In view of these conclusions I deem it unnecessary to determine whether the state or the tax commissioner could be made parties in this cause without the consent of the state.
A decree will be advised in accordance with these conclusions.